IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Custom Coated Components, Inc.,     ) | |
| ) | |
| Plaintiff,   ) | Civil Action No. 2:05-1547-CWH |
| ) | |
| vs.   ) | |
| ) | **ORDER** |
| Benteler Automotive Corporation,   ) | |
| ) | |
| Defendant.   ) | |
| _____) | |

      This matter is before the Court on Benteler Automotive Corporation's (Benteler) motion to dismiss or in the alternative, motion to transfer venue under 28 U.S.C. § 1404. Custom Coated Components, Incorporated (Custom Coated) opposed the motion and the Court conducted a hearing on October 12, 2005. At this hearing, the Court directed Benteler to supplement the record, which it did on October 27, 2005. Custom Coated supplemented its opposition to transfer venue on October 27, 2005.

      This dispute arises out of a requirements contract to supply insulation for automotive parts entered into by Custom Coated and Benteler. Custom Coated brought this breach of contract action after Benteler ceased ordering its insulation requirements from Custom Coated in February, 2005. Benteler claims that Custom Coated rejected the parties' agreement in Custom Coated's Chapter 11 bankruptcy reorganization plan, that Custom Coated is estopped from bringing this post-bankruptcy suit against Benteler, or in the alternative, that pursuant to the parties' agreement, the Court should transfer the action to Michigan. For the following reasons, the Court holds that the action should be transferred to the United States District Court for the

Western District of Michigan.

Facts

Benteler is a Michigan corporation with its principal place of business in Auburn Hills, Michigan. Benteler has contracted with General Motors to manufacture a component for General Motors's 3800 engine. This component requires insulation. Custom Coated is a South Carolina corporation and is located in Summerville, South Carolina. Custom Coated produces insulation for automotive parts. Earnest Candies (Candies) is the owner and chief executive of Custom Coated.

In July, 1998, on behalf of Custom Coated, a sales representative approached Benteler to sell insulation to Benteler. On July 23, 1998, Custom Coated issued a quote to supply Benteler insulation, tool molding dies, and inspection gages. Subsequently, in a letter dated September 14, 1998, Benteler agreed that if Custom Coated invests in retooling its facilities, Benteler would commit to sourcing the insulation program with Custom Coated. The letter advised that Benteler wanted to conduct a preliminary supplier assessment with Custom Coated, review the supply program, and validate Custom Coated's minority status. On September 18, 1998, Custom Coated responded by stating that it understood and accepted the parameters provided by Benteler.

On November 4, 1998, Benteler sent Custom Coated a three-page front and back sided scheduling agreement for the purchase of insulation.[1] The scheduling agreement stated that it

---

[1] The scheduling agreement dated November 4, 1998, was not acknowledged by Candies. The earliest scheduling agreement acknowledged by Candies is dated April 14, 1999. Custom Coated does not dispute that it received the scheduling agreement on November 4, 1998, or that all of the scheduling agreements and acknowledgments it received contain the same procurement conditions as the November 4, 1998, scheduling agreement.

was valid from November 4, 1998, through December 31, 1999.  The front side included a provision that "SELLER MUST COMPLY WITH ALL GUIDELINES AND PROVISIONS STATED ON THE REVERSE SIDE OF THIS PURCHASING AGREEMENT."[2]  The reverse sides of the scheduling agreement are entitled "Procurement conditions."  Procurement condition number 1 is an integration clause stating that the terms in the purchase order are the sole terms for the purchase of goods and services by Benteler.  Procurement condition number 26 is a forum selection clause and states as follows:

> Jurisdiction.  Seller and Purchaser agree that any action arising out of the sale of goods or services in accordance with this purchase order will be brought, heard and decided in the Courts of the State of Michigan in Grand Rapids Michigan or in the Federal Court for Western District of Michigan located in Grand Rapids, Michigan.

Procurement condition number 27 is a choice of law clause which states that: "The sale of goods and services in accordance with this purchase order shall be governed in all respects by the laws of the state of Michigan in the United States of America."  Subsequent to receipt of this scheduling agreement, Custom Coated's sales agent generated an internal memorandum dated November 5, 1998, congratulating Candies on obtaining Benteler's conditional purchase order.

On April 13, 1999, Benteler sent Custom Coated a revised scheduling agreement increasing the price per unit for insulation.  Attached with this scheduling agreement was a document labeled "Acknowledgment."  This acknowledgment contained the same integration clause, forum selection clause, and choice of law clause found on the November 4, 1998, scheduling agreement.  The acknowledgment also stated that: "SELLER MUST COMPLY

---

[2] The scheduling agreement refers to itself as a purchase order.  The scheduling agreement, however, only purports to define the parties agreement and does not place an order for insulation.

WITH ALL GUIDELINES AND PROVISIONS STATED ON THE REVERSE SIDE OF THIS PURCHASING DOCUMENT." Candies signed each page of the acknowledgment on April 19, 1999.

On January 3, 2000, Benteler sent Custom Coated another scheduling agreement and acknowledgment extending the agreement through December 31, 2000.  On January 12, 2000, Earnest Candies signed the acknowledgment.  Candies also wrote on this acknowledgment that: "All condition [sic] of contract to remain the same as stated on scheduling agreement dated 11/04/98."

From November 4, 1998, through January 5, 2005, Benteler sent Custom Coated a scheduling agreement and acknowledgment whenever the price for insulation changed or the scheduling agreement expired.  Except for the November 4, 1998, scheduling agreement, Candies responded to every scheduling agreement with a signed acknowledgment.

On February 16, 2004, Custom Coated petitioned under Chapter 11 to reorganize under bankruptcy protection. On September 14, 2004, Custom Coated filed a plan of reorganization. Section 6 of the plan provides that: "Unless accepted in the Plan under the classes of creditors upon the date of confirmation of this plan, all existing executory contracts, agreements, and leases except those addressed by this plan are rejected."  Section 3 of the plan contains the classes of creditors but does not mention a contract between Benteler and Custom Coated.  On December 23, 2004, the United States Bankruptcy Court for the District of South Carolina confirmed the plan and provided the parties 60 days to amend the plan.

On January 5, 2005, Benteler sent Custom Coated the last scheduling agreement and acknowledgment prior to this action.  This scheduling agreement extended the agreement to

December 31, 2005. The acknowledgment contained the same procurement conditions found on the November 4, 1998, scheduling agreement and stated that: "SELLER MUST COMPLY WITH ALL GUIDELINES AND PROVISIONS STATED ON THE REVERSE SIDE OF THIS PURCHASING DOCUMENT." Candies signed the acknowledgment on January 11, 2005. On February 25, 2005, Benteler terminated the contract with Custom Coated. On May 31, 2005, Custom Coated commenced this action.

Motion to transfer venue

Benteler moves to transfer this action pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that for the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer a civil action to another district or division where the action might have been brought. 28 U.S.C. § 1404(a).[3] A section 1404(a) motion to transfer "calls on the district court to weigh in the balance a number of case-specific [public and private] factors." See Stewart Org. Inc. v. Ricoh, 487 U.S. 22, 29-30 (1988). The private factors include (1) the parties' preferences, (2) where the claim arose, (3) the convenience to the parties given their relative physical and financial condition, (4) convenience to the witnesses to the extent that the witnesses may be unavailable for trial, and (5) the location of evidence to the extent it would not be available for trial. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The public factors include:

> the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the

---

[3] Benteler is incorporated in Michigan and has its principal place of business in the Western District of Michigan. As a result, venue would be proper there. 28 U.S.C. § 1391(a) and (c). Custom Coated does not dispute that venue is proper in the Western District of Michigan.

public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. (citations omitted). After reviewing the record, the Court finds that the factors weigh in favor of transferring the case to Michigan. The Court bases this decision on the following factors:

1. Private factors.

    A. The parties' preference.

A valid forum selection clause indicates the parties' preference for venue and weighs heavily in favor of transferring an action to the venue agreed upon by the parties. Stewart Org., Inc., 487 U.S. at 29-30. Custom Coated, however, contends that the forum selection clause was not a term in the contract, and was induced by fraud or overreaching.

First, Custom Coated contends that the parties' formed a contract before Benteler issued the November 4, 1998, scheduling agreement, and because the forum selection clause contained in the scheduling agreement materially alters the parties' contract, the forum selection clause is not a term in the contract. S.C. Code § 36-2-207(2). When parties enter into a contract, and subsequently, the buyer submits a purchase order containing different or additional terms which materially alter the contract, those different or additional terms do not automatically become part of the contract. S.C. Code § 36-2-207; see also Valtrol, Inc. v. General Connectors Corp., 884 F.2d 149, 155 (4th Cir. 1989). This rule prevents one party from unilaterally imposing additional or different terms not bargained for by both parties. Valtrol, Inc., 884 F.2d at 155; see also Gold Kist, Inc. v. Citizens and Southern National Bank of South Carolina, 333 S.E.2d 67, 71 (S.C. Ct. App. 1985)(warranty disclaimer submitted after parties entered into oral contract was not part of the contract because the parties did not bargain for the disclaimer.)

Custom Coated, however, clearly understood and acquiesced that the scheduling

agreement contained the terms controlling the parties' relationship. After receiving the November 4, 1998, scheduling agreement, Custom Coated's sales agent generated a memo congratulating Candies on obtaining Benteler's conditional purchase order and warning that if Benteler's conditions are not met, production will be delayed, possibly indefinitely. Furthermore, on January 13, 2000, Candies wrote on an acknowledgment that: "All condition [sic] of contract to remain the same as stated on scheduling agreement dated 11/04/98."

In addition, for six years, Custom Coated signed acknowledgments of the scheduling agreements. The scheduling agreements and acknowledgments stated in large print that the seller must comply with all provisions on the reverse sides of the purchasing document. The reverse sides include an integration clause which states that the purchase order contains the terms of the agreement which apply to the exclusion of any inconsistent or additional terms contained in Custom Coated's quotation. Custom Coated assented to the terms found in the scheduling agreements, and the forum selection clause is a term of the parties' contract.

Second, Custom Coated contends that the forum selection clause was induced by fraud or overreaching.[4] To support this argument, Custom Coated asserts that Benteler's desire to

---

[4] Prior to the Supreme Court's decision in Stewart, forum selection clauses were *prima facie* valid and enforced unless a court found the clause to be unreasonable under the circumstances. M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); see also Sterling Forest Associates, ltd. v. Barnett-Range Corp., 840 F.2d 249, 251 (4th Cir. 1988) (applying The Bremen holding to case sitting in diversity). In The Breman, the Supreme Court announced four factors a court should consider when determining if a clause is unreasonable: (1) the formation was induced by fraud or overreaching; (2) the complaining party will be deprived of his day in court; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) the enforcement would contravene a strong public policy of the forum state. The Breman, 407 U.S. at 12-13.

Later in Stewart, the Supreme Court clarified that despite a forum selection clause, a motion to transfer venue pursuant to section 1404(a) requires courts to weigh in the balance private and public factors when deciding whether to transfer an action. Stewart Org., Inc., 487

enforce terms directly opposing the parties' negotiated terms constitutes fraud and overreaching. Custom Coated cites as an example the procurement condition in the scheduling agreement which allows Benteler to cancel the agreement at any time. Custom Coated asserts that this condition directly contradicts Benteler's promise to order insulation requirements from Custom Coated for the life of Benteler's program with General Motors.

      This allegation, however, is not sufficient to void the parties' agreement based on a claim of fraud. As explained above, Benteler provided the scheduling agreements to Custom Coated on several occasions. A party asserting a fraud claim must prove a right to rely on the misrepresentation. Regions Bank v. Schumauch, 354 S.C. 648, 672 (Ct. App. 2003). Custom Coated is a sophisticated party and ignorance due to the failure to read a contract is not an excuse sufficient to void a contract for fraud. Id. Such ignorance is also insufficient to invalidate a forum selection clause for overreaching. Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel, Corp., 696 F.2d 315, 318 (4th Cir. 1982)(placement of forum selection clause on reverse side of purchase order and in small type is not overreaching).

      Custom Coated fails to demonstrate that the forum selection clause was not a term in the parties' contract or that Benteler induced acceptance of the forum selection clause through fraud or overreaching. The parties agreed to litigate the action in Michigan, and this factor, the

---

U.S. at 31. The Supreme Court held, therefore, that the presence of a forum selection clause was a factor that weighed heavily in favor of transferring venue but was not dispositive of the issue. Id at 29, 31. The Supreme Court further held that a state's public policy against the enforcement of forum selection clauses is not dispositive of a decision to transfer but is a public factor a court should consider in the balancing test required under section 1404(a). Id at 31.

parties' preference, favors transferring the action.[5]  As to the remaining relevant private factors, both sides allege inconvenience of the parties and witnesses depending on where the action is litigated, and these two factors do not favor either party.

    2.  Public factors.

South Carolina has an interest in providing a "means for its citizens to seek a remedy against foreign corporations which allegedly breach contracts with its citizens when the foreign corporation contemplated that such contract would be performed in whole or in part in [South Carolina.]"  Askins v. Firedoor Corp. of Florida, 316 S.E.2d 713, 717 (S.C. Ct. App.1984); see also Colite Industries, Inc. v. G.W. Murphy Const. Co., Inc., 377 S.E.2d 321, 322-323 (S.C. 1989)(personal jurisdiction over foreign corporation that knew contract would be performed in South Carolina).  Moreover, South Carolina disfavors contract provisions which require a party to bring an action in a forum other than as provided under South Carolina's venue provisions. S.C. Code § 15-7-120(A).[6] The scheduling agreement provides that Michigan law controls

---

[5] Custom Coated also argues that the forum selection clause does not apply to disputes arising out of Benteler's refusal to purchase goods.  The forum selection clause applies to "any action arising out of the sale of goods and services in accordance with this purchase order. . . ." Custom Coated's claim is that Benteler breached its obligation to order its insulation requirements from Custom Coated.  The dispute is over the sale of insulation, and consequently, the dispute arises out of the sale of goods in accordance with the purchase order.

[6] The question of whether code section 15-7-120(A) expresses a policy against the enforcement of interstate forum selection clauses is undecided in this district.  See Atlantic Floor Services v. Wal-Mart Stores, 334 F.Supp.2d 875 (D.S.C. 2004)( Harwell, J.)(holding code section 15-7-120(A) did not prevent specific enforcement of interstate forum selection clause) and Consolidated Insured Benefits, Inc. v. Conseco Medical Insurance Co., 370 F.Supp.2d 397 (D.S.C. 2004)(Herlong, J.)(refusing to specifically enforce forum selection clause pursuant to code section 15-7-120(A)). A state's policy against the enforcement of forum selection clauses, however, is only one factor a court considers in motions to transfer under section 1404(a). Stewart Org., Inc., 487 U.S. at 31.

disputes arising out of the purchase of the insulation, and this factor weighs in favor of transferring the action.

While public factors that weigh against transferring the action exist, the Court holds that these factors are insufficient to overcome the parties' agreed preference of venue in Michigan. See Brock v. Entre Computer Centers, Inc., 933 F.2d 1253, 1258 (4th Cir. 1991). Accordingly, the Court hereby transfers this case to the United States District Court for the Western District of Michigan pursuant to 28 U.S.C. § 1404(a).

        **AND IT IS SO ORDERED.**

*[Signature: C. Weston Houck]*
_____

January 25, 2006                                                        **C. WESTON HOUCK**
Charleston, South Carolina                 **UNITED STATES DISTRICT JUDGE**